```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -  x
UNITED STATES OF AMERICA          :
                                  :
       - v -                      :
                                  :    15 Cr. 588 (ER)
AHMED MOHAMMED EL GAMMAL,         :
           Defendant.             :
- - - - - - - - - - - - - - - - -  x
```

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S PRETRIAL MOTION TO SUPPRESS, AND FOR DISCLOSURE OF
FISA ORDER, APPLICATION, AND RELATED MATERIALS**

```
                         Federal Defenders of New York
                         Daniel Habib, Esq.
                         Annalisa Miron, Esq.
                         Sabrina Shroff, Esq.
                         Attorneys for Defendant
                              Ahmed Mohammed El Gammal
                         52 Duane Street - 10th Floor
                         New York, NY 10007
                         Tel.: (212) 417-8769
```

```
TO:      PREET BHARARA, ESQ.
         United States Attorney
         Southern District of New York
         1 St. Andrew's Plaza
         New York, NY 10007

Attn:    Andrew DeFilippis, Esq.
         Brendan Quigley, Esq.
         Negar Tekeei, Esq.
         Assistant United States Attorneys
```

Ahmed Mohammed El Gammal submits this reply memorandum of law in further support of his motion to suppress evidence obtained from a FISA search, or, in the alternative, for disclosure of the FISA order, application, and related materials (in particular, the Attorney General's certification and the minimization procedures), Dkt. Nos. 61-63.

El Gammal has identified, with a necessary degree of speculation, several possible deficiencies in the government's FISA application and search that may require suppression. Def't Mem. (Dkt. No. 63), at 7-16. In the alternative, he has shown why FISA and the Constitution compel disclosure, and how the use of protective orders, sealed proceedings, and cleared counsel can mitigate the government's (quite legitimate) national-security concerns. Id. at 16-20. As to suppression, the government's unclassified opposition, Dkt. No. 70, contains nothing but boilerplate: the government has left unredacted not one case-specific detail. See Gov't Mem. 27-38. As a result, El Gammal can't reply, as the government no doubt prefers. What advocate wouldn't?

As to disclosure, the government misstates the law. Id. 38-44. FISA contemplates disclosure not "only if the Court is unable to determine the legality of the ... physical searches ... without the assistance of defense counsel," Gov't Mem. 39-40 (citing 50 U.S.C. § 1825(g)), but also "to the extent that due

1

process requires discovery or disclosure," § 1825(h). The government likewise overstates the need for blanket secrecy with respect to FISA materials. In fact, the government itself has released some versions of its FISA minimization procedures; and recently, when pressed by the Ninth Circuit, has conceded that some aspects of a national-security investigation could be disclosed in a published opinion. See United States v. Mohamud, No. 14-30217 (9th Cir. Sept. 2, 2016), Dkt. Nos. 109-2 and 109-3. Finally, the government mischaracterizes the relevance of counsel's security clearance. The defense has not argued that Ms. Shroff's ability to review classified material in the SCIF "entitles" El Gammal to the FISA materials or is a "sufficient" basis for disclosure. Gov't Mem. 41-42. Rather, the defense simply observes that the disclosure of other classified material to counsel in this case has posed no threat to national security. This Court should grant El Gammal's motion to suppress, or, at least, order disclosure and allow a fair fight.

**ARGUMENT**

**This Court Should Order Disclosure Of The FISA Application, Order, And Related Materials.**

A. FISA Contemplates, And The Constitution Requires, Broader Disclosure Than The Government Suggests.

The government's opposition depends upon a serious misstatement of the law: "There is only one reason to disclose the FISA materials to defense counsel.  50 U.S.C. § 1825(g) states that the Court must conduct its review of those materials in camera and ex parte, and disclosure is within the Court's discretion only following that review and only if the Court is unable to determine the legality of the ... physical searches ... without the assistance of defense counsel."  Gov't Mem. 39-40.  In fact, FISA itself contemplates "discovery or disclosure" "to the extent that due process requires." § 1825(h).  Thus, as the Second Circuit has explained, this Court "has the 'discretion to disclose portions of relevant materials, under appropriate protective procedures, but only if it decides that such disclosure is 'necessary to make an accurate determination of the legality of the surveillance' or is otherwise required by due process." United States v. Stewart, 590 F.3d 93, 128 (2d Cir. 2009) (quoting United States v. Duggan, 743 F.2d 59, 78 (2d Cir. 1984)) (emphasis added).

Due process requires disclosure not only of exculpatory evidence (Gov't Mem. 41), but also information relevant and helpful to litigating suppression issues.  See United States v. Gamez-Orduno, 235 F.3d 453, 461 (9th Cir. 2000) (holding that failure to disclose evidence material to motion to suppress violates due process); Nuckols v. Gibson, 233 F.3d 1261, 1266-67

3

(10th Cir. 2000) (Brady applies to information useful in litigating admissibility of defendant's confession); U.S. Attorneys' Manual § 9-5.001(C)(2) ("A prosecutor must disclose information that ... might have a significant bearing on the admissibility of prosecution evidence.").

That constitutional backstop is consistent not only with longstanding principles of adversarial adjudication, see, e.g., Def't Mem. 18-19 (discussing Alderman v. United States, 394 U.S. 165 (1969)), but also with FISA's text, structure, and legislative history.  On its face, the statute allows defendants to move for disclosure of FISA materials; it envisions that the Attorney General may oppose disclosure in some cases but not others; it empowers district courts to order the disclosure of FISA materials even over the Attorney General's objection; and it empowers district courts to tailor disclosure to the circumstances of each case.  Likewise, Congress contemplated that FISA materials would be disclosed in cases involving especially complex issues of fact or law. The Senate Judiciary and Intelligence Committees explained that Congress sought to "strik[e] a reasonable balance between an entirely in camera proceeding which might adversely affect the defendant's ability to defend himself and mandatory disclosure, which might occasionally result in the wholesale revelation of sensitive foreign intelligence information."  S. Rep. No. 604(I), 95th

4

Cong., 1st Sess., at 57, reprinted in 1978 U.S.C.C.A.N. 3959; S. Rep. No. 701, 95th Cong., 2d Sess. at 64, reprinted in 1978 U.S.C.C.A.N. 4033.  The Committees also described factors that they expected courts to consider when applying the disclosure provisions.  Disclosure would likely be warranted, they wrote, when questions about a FISA order's legality were "more complex."  Id.  Disclosure might be warranted because of the "volume, scope, and complexity" of the materials, or because of other factors, such as "indications of possible misrepresentations of fact."  Id.  See United States v. Belfield, 692 F.2d 141, 147-48 (D.C. Cir. 1982) (discussing Congress's intent to require disclosure where questions of law may be complicated); United States v. Ott, 827 F.2d 473, 476 (9th Cir. 1987).

In addition to due process, similar Fourth Amendment considerations, specifically, those reflected in Franks v. Delaware, 438 U.S. 154 (1978), mandate disclosure.  Franks holds that upon a satisfactory initial showing of falsity in a warrant application, the Fourth Amendment entitles a defendant to an evidentiary hearing: "[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of

5

probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." 438 U.S. at 155-56.  But without access to the FISA application, such a showing is impossible (not merely a "challenge," Gov't Mem. 37), an incompatibility that numerous courts have recognized.  <u>See</u>, <u>e.g.</u>, <u>United States v. Daoud</u>, 755 F.3d 479, 485-87 (7th Cir. 2014) (Rovner, J., concurring).  Construing FISA as the government suggests -- in effect, to disentitle FISA defendants to <u>Franks</u> hearings in all cases -- would raise grievous Fourth Amendment concerns.  "Thirty-six years after the enactment of FISA, it is well past time to recognize that it is virtually impossible for a FISA defendant to make the showing that <u>Franks</u> requires in order to convene an evidentiary hearing, and that a court cannot conduct more than a limited <u>Franks</u> review on its own."  <u>Daoud</u>, 755 F.3d at 496 (Rovner, J., concurring).

<u>B.    National Security Does Not Command Blanket Non-Disclosure, As The Government's Own Actions Confirm.</u>

El Gammal has sought, among other things, disclosure of the minimization procedures applicable to any FISA searches of him.  Def't Mem. 2, 14-16.  In response, the government has produced a declaration by the Attorney General averring that "it would harm the national security of the United States to disclose or hold an adversary hearing with respect to" any FISA materials, including those minimization procedures.  Dkt. No. 70-1, ¶ 3.

Citing the Attorney General's claim, the government has refused to disclose any of the requested FISA materials to the defense, even under an appropriate protective order.  But the government's position is severely undermined by its own decision to disclose portions of the FBI's Standard Minimization Procedures for FISA physical searches, http://bit.ly/2dRY9sD; and portions of the NSA's Standard Minimization Procedures for FISC-approved electronic surveillance, http://bit.ly/2dFyJQi.  These public disclosures include the very types of documents and information sought by the defense.  The government's release of this information to the public calls into question its previous claim that disclosure would compromise national security.

Similarly, the government has disclosed aspects of intelligence collection in other pending criminal cases.  Recall that in his motion for notice and discovery of surveillance techniques (Dkt. No. 66, at 7) El Gammal observed that under Section 702 of the FISA Amendments Act, the government uses two tools to conduct warrantless surveillance of Americans' international communications: PRISM, which collects data directly from the servers of service providers such as Microsoft, Yahoo, Google, and Facebook; and Upstream, which intercepts communications on fiber-optic cables.  See also Privacy and Civil Liberties Oversight Board ("PCLOB"), Report on the Surveillance Program Operated Pursuant to Section 702 of the

7

Foreign Intelligence Surveillance Act 33-41, 113-26 (July 2, 2014), https://www.pclob.gov/library/702-Report.pdf.

In United States v. Mohamud, No. 14-30217, the Ninth Circuit recently directed the government to explain why it could not publicly reveal that PRISM, as opposed to Upstream, was used in that case. Order dated July 29, 2016, at 1-2, Dkt. No. 109-3. The government then conceded that the information could be disclosed without damage to national security, while apparently offering no explanation for its refusal to disclose those facts to the defendant for nearly three years. Gov't Notice at 2, 5, Dkt. No. 109-2 ("This case does not involve so-called upstream collection."). The proceedings in United States v. Hasbajrami reflect the same pattern. There, the district court insisted on publicly explaining that its opinion addressed only the lawfulness of PRISM surveillance and did not address or endorse the even more expansive surveillance of internet communications conducted under Upstream. See 2016 WL 1029500, at *6-7 (E.D.N.Y. Mar. 3, 2016) (contrasting PRISM and Upstream surveillance). As evidenced by the court's public opinion, the government ultimately agreed that this information could be disclosed, notwithstanding the representations it had previously made in order to block any discovery by the defense. See id. at *7 ("The government conducted the disputed surveillance in this

8

case under the PRISM program. ... [T]he constitutionality of upstream collection is not at issue.").

Obviously, every case differs, but the government's willingness to disclose FBI and NSA minimization procedures, and to acknowledge in two pending matters that PRISM surveillance was employed, should prompt this Court to regard blanket assertions of national-security privilege with skepticism.

## CONCLUSION

For the reasons stated, this Court should grant El Gammal's motion to suppress, or, in the alternative, order disclosure of the FISA order, application, certifications, and minimization procedures.

Dated:   New York, New York
         October 7, 2016

                                    Respectfully submitted,
                                    Federal Defenders of New York

                                    /s/
                                    Daniel Habib, Esq.
                                    Annalisa Miron, Esq.
                                    Sabrina Shroff, Esq.
                                    Attorneys for Defendant
                                       **Ahmed Mohammed El Gammal**
                                    52 Duane Street - 10th Floor
                                    New York, NY 10007
                                    Tel.: (212) 417-8769