```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA          :
                                  :
      - v -                       :
                                  :       15 Cr. 588 (ER)
AHMED MOHAMMED EL GAMMAL,         :
           Defendant.             :
- - - - - - - - - - - - - - - - - x
```

## REPLY MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANT'S PRETRIAL MOTION
## FOR NOTICE AND DISCOVERY OF SEARCHES, SEIZURES, AND SURVEILLANCE TECHNIQUES, AND THEIR LEGAL BASES

```
                        Federal Defenders of New York
                        Daniel Habib, Esq.
                        Annalisa Miron, Esq.
                        Sabrina Shroff, Esq.
                        Attorneys for Defendant
                            Ahmed Mohammed El Gammal
                        52 Duane Street - 10th Floor
                        New York, NY 10007
                        Tel.: (212) 417-8769


TO:     PREET BHARARA, ESQ.
        United States Attorney
        Southern District of New York
        1 St. Andrew's Plaza
        New York, NY 10007

Attn:   Andrew DeFilippis, Esq.
        Brendan Quigley, Esq.
        Negar Tekeei, Esq.
        Assistant United States Attorneys
```

1

Ahmed Mohammed El Gammal submits this reply memorandum of law in further support of his motion for notice and discovery of all searches, seizures, and surveillance techniques employed in this case and their legal bases, Dkt. Nos. 64-66.

Litigating blindfolded, El Gammal has made a prima facie showing that the government has employed non-standard techniques to investigate him and plans to use the results of those extraordinary searches and seizures against him at trial. See Def't Mem. (Dkt. No. 66), at 2-14. And he has shown why the Constitution, statute, and the Federal Rules of Criminal Procedure compel the government to tell him what those searches were, and what fruit they bore. Id. at 14-22.

The government could have mooted El Gammal's motion with a single sentence (and still can). Any of the following would do:

- The government has provided the defense with notice of all the searches, seizures, and surveillance techniques used in this case.
- Besides the FISA searches of ▇▇▇▇▇▇▇▇▇▇▇▇ as to which we've already provided notice, the government has not conducted any extraordinary searches of El Gammal.
- Besides the results of the FISA-authorized search of El Gammal's ▇▇▇▇▇▇▇▇, the government will not seek to introduce at trial any evidence obtained or derived from any extraordinary searches.
- Besides the results of the FISA-authorized search of El Gammal's ▇▇▇▇▇▇▇▇, the government will not seek to introduce at trial any evidence obtained or derived from any undisclosed investigative technique.

1

But the government has chosen to say none of those things -- indeed, not to engage with the merits of El Gammal's argument at all (except by reference to a classified filing that the defense cannot see). The implication is unmistakable: the government has engaged in surreptitious searches of just the type that El Gammal has catalogued, intends to introduce the fruits (whether direct or derivative) of those searches at trial, and means to keep the searches secret. In deciding whether unlawful surveillance has tainted evidence to be introduced in a federal criminal prosecution, courts have long "refused to accept the <u>ex parte</u> determination of relevance by the Department of Justice in lieu of adversary proceedings in the District Court." <u>Alderman v. United States</u>, 394 U.S. 165, 168 (1969). <u>See</u> <u>United States v. Magaddino</u>, 496 F.2d 455, 459 (2d Cir. 1974) (noting "the need for a full adversary hearing to determine whether evidence had, in fact, been illegally seized or substantially tainted by a prior illegal seizure."). El Gammal's motion should be granted.

**ARGUMENT**

**The Government Must Provide Notice And Discovery Of The Search, Seizure, And Surveillance Techniques Used In This Case, And Their Legal Bases.**

A.   <u>The Evidence Available To The Defense, In Conjunction With The Government's Response To This Motion, Suggests The Use Of Undisclosed Investigative Techniques</u>.

2

With the limited information available, El Gammal has made a substantial prima facie showing that the government used extraordinary searches and seizures to investigate him. Specifically, El Gammal has pointed to the government's acknowledged FISA search of ███████████████; an inference from Rule 16 discovery that the government learned his identity through non-standard means; an inference that ██████████ ████████████████████████ ███████████████ ████████ and the myriad tools available to the government in national security cases.[1]  Def't Mem. 2-16.  The government responds without explanation that El Gammal's inferences from Rule 16 discovery are "baseless," then refers to "[a]dditional background regarding this investigation" that appears in a classified filing El Gammal can't read.  Gov't Mem. (Dkt. No. 68) 5 & n.2.

---

[1] At least, the known tools.  The government continues to use secret investigative techniques in terrorism cases.  For example, "Yahoo Inc. last year secretly built a custom software program to search all of its customers' incoming emails for specific information provided by U.S. intelligence officials." Joseph Menn, Yahoo Secretly Scanned Customer Emails for U.S. Intelligence -- Sources, Reuters (Oct. 4, 2016), http://reut.rs/2dGgV67.  Specifically, Yahoo was searching "for messages containing a computer 'signature' tied to the communications of a state-sponsored terrorist organization." Charlie Savage & Nicole Perlroth, Yahoo Said to Have Aided U.S. Email Surveillance by Adapting Spam Filter, N.Y. Times (Oct. 6, 2016), http://nyti.ms/2e5h4UV.  El Gammal, like millions of Americans, has a Yahoo email account.

3

El Gammal's assertion is anything but baseless. The defense has set forth the factual basis for its belief in detail. El Gammal would be glad to engage with the government's alternative explanation, but the government has withheld that opportunity. This approach is antithetical to our justice system's adversarial procedural norms. See <u>Alderman</u>, 394 U.S. at 183-84 ("Adversary proceedings are a major aspect of our system of criminal justice. Their superiority as a means for attaining justice in a given case is nowhere more evident than in those cases ... where an issue must be decided on the basis of a large volume of factual materials.").

More important, El Gammal's specific inferences -- that the government learned his identity through an undisclosed search and ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ -- were simply the best evidence of non-standard investigative techniques that the defense could marshal from Rule 16 discovery. (Drawing even those inferences was difficult: as El Gammal has shown, without cavil from the government, "parallel construction" is meant to generate a laundered evidentiary record that obscures secret searches. Def't Mem. 12-14.) But even if these particular inferences prove incorrect, it does not follow that the government used no such techniques. Witness the government's response itself, which steadfastly refuses to deny El Gammal's assertion that

4

non-standard investigative techniques featured in this investigation and yielded trial evidence.  To repeat: the government could have mooted this motion with a simple denial of that assertion.  Its election not to points to only one conclusion.

B.   El Gammal Is Entitled To Notice Of Undisclosed Techniques So That He Can Litigate The Admissibility Of Any Evidence That They Yielded.

On the law, El Gammal has explained why the Fourth and Fifth Amendments, 18 U.S.C. § 3504, and Fed. R. Crim. P. 12 and 16 entitle him to notice of the search techniques used in this case.  Def't Mem. 14-22.  The government dismisses that analysis as "unavailing" in a conclusory paragraph, assuring this Court that "[t]he Government is aware of and has complied ... with its discovery obligations" -- take their word for it.  Gov't Mem. 6.[2]  Of course, the defense has no way to assess that assertion without knowing what searches the government conducted.  In the

---

[2] Patting itself on the back for doing what Rule 16 requires, the government observes that it "has produced a large volume of discovery," including information "related to the sources of evidence comprising its case-in-chief."  Gov't Mem. 1, 4.  The government's voluminous discovery production supports El Gammal's belief that extraordinary searches occurred.  The government used every means at its disposal to probe every corner of El Gammal's life.  And although the government has provided some information about "the sources of" its evidence, the defense believes that it has not provided all such information -- hence this motion.

5

ordinary case -- say, the search of a defendant's home -- the defendant's awareness that a search has occurred, see, e.g., Fed. R. Crim. P. 41(f)(1)(C), enables him to seek discovery of the warrant application if the government does not produce it. Here, in contrast, El Gammal cannot test the government's claim.

More fundamentally, however, the government's assurance is unsatisfactory because the parties disagree about the scope of the government's discovery obligations.  The government says that it "has used a number of investigative techniques in this case.  Not all of those techniques require notice or disclosure at this (or any) stage of the investigation."  Gov't Mem. 5.  El Gammal's position is that he is entitled to notice of any search, but in particular, any extraordinary national-security search, from which trial evidence was obtained or derived, so that he can litigate suppression.  The government appears to believe that El Gammal is entitled to much less.  See Def't Mem. 10-12 (recounting government's efforts to deprive defendants of notice that evidence was derived from Executive Order 12333, "StellarWind," NSA's bulk call records program, and Section 702 surveillance).  Likewise, the government has, in the past, taken a narrow view of what "derived from" means.  See Def't Mem. 12, 17-18.  (In El Gammal's view, any evidence "obtained by the exploitation of" information gleaned from extraordinary surveillance is "derived from" such surveillance.  See § 3504;

6

United States v. Trzaska, 111 F.3d 1019, 1027 (2d Cir. 1997).) As a result, granting this motion is the only way to ensure that El Gammal has a full and fair opportunity to litigate any meritorious Fourth Amendment claims.

Indeed, even when the government endeavors to demonstrate compliance with the law, its efforts prompt more questions. For example, the government observes that it provided FISA notice in July 2016 (11 months after El Gammal was indicted and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮), then writes:

> The Government did not provide any such notice in this case with respect to any other search(es) or surveillance in this case. That is because the Government does not intend to use at any proceeding in this case results of any FISA searches or surveillance that may have been conducted, if there were any, other than the materials that were the subject of the July 13, 2016 Notice. Nor does the government intend to use against the defendant any evidence that was obtained or derived from FISA searches or surveillance, if there were any, aside from the materials that are the subject of the July 13, 2016 Notice.

Gov't Mem. 6 (emphases added). The government's justification for non-disclosure (what comes after the "because") is a non-sequitur. The defense agrees that FISA only requires notice of the government's intent to introduce evidence "obtained or derived from a physical search pursuant to" FISA itself. See 50 U.S.C. § 1825(d). But, at the risk of stating the obvious, FISA says nothing about the government's disclosure obligations with

7

respect to evidence obtained or derived from non-FISA searches. As a result, the above-quoted paragraph reflects, most of all, a studious effort to avoid saying what would resolve this motion, viz., that the government will not use evidence obtained or derived from any undisclosed search or surveillance.

## CONCLUSION

For the reasons stated, this Court should order the government to disclose all searches, seizures, and surveillance techniques employed in this case, as well as their legal bases.

Dated:    New York, New York
          October 7, 2016

                              Respectfully submitted,
                              Federal Defenders of New York

                              /s/
                              Daniel Habib, Esq.
                              Annalisa Miron, Esq.
                              Sabrina Shroff, Esq.
                              Attorneys for Defendant
                                  **Ahmed Mohammed El Gammal**
                              52 Duane Street - 10th Floor
                              New York, NY 10007
                              Tel.: (212) 417-8769